PERKINS *against* THE WASHINGTON INSURANCE COMPANY OF THE CITY OF NEW-YORK.

The defendants, being a company, incorporated, in the city of *New-York*, for the purpose of insuring property against loss or damage by fire, appointed *R.* their *surveyor*, at *Savannah*, in *Georgia*, to survey and return a description of the property offered for insurance, and to state the terms, and probable rates of insurance to applicants, and to receive from those, who were willing to pay, the premiums which he might name, and to transmit the same to the defendants, who reserved to themselves the right of deliberating and deciding on the applications, and to accept or reject them, in their discretion; and their printed proposals stated, that no insurance would be considered as made, or binding, until the premium was paid, &c.: *Held,* that *R.* was not the general agent of the defendants for effecting insurance, nor were they bound by his agreement, for that purpose, or his receipt of the premium of insurance, so as to make them responsible for a loss happening before the premium was transmitted to them, and before they knew of the application; and, of course, before they had considered of, or accepted the proposal, or executed a policy of insurance.

THE defendants, being an incorporated company, for *December* 28. the purpose, among other things, of insuring against loss or damage by fire, on the 11th of *December*, 1818, appointed *Henry P. Russell*, residing at *Savannah*, in the state of *Georgia*, their "surveyor of buildings and goods, offered to be insured in *Savannah*." On the 10th of *February*, 1819, *R.*, of his own accord, and without any direction from the defendants, published an advertisement at *S.*, stating, that insurance, by the defendants, might be effected by application to *R.*, who had a table and classes of hazards, and rates of annual premiums, to be exhibited, and that he was authorized to say, that insurance would be effected as favourable to the insured, as those of any other company in the *United States;* and that he (*R.*) would

1822.

PERKINS
v.
WASHINGTON
INS. CO.

attend to the surveying of the property, and would obtain the policies from the defendants, with the least possible delay. This advertisement was signed by *R.* as *agent for Savannah.* He received from the defendants their printed proposals, and the printed or blank form of their policies. The printed proposals stated, that all applications for insurance must be made at their office, and that no insurance was to be considered as made, or binding, *until the premium was paid.* The policies, from time to time, were sent by the defendants to *R.* On the 27th of *April,* 1819, the *president* of the company wrote to him, stating, that in a case mentioned, the defendants had taken the property at a less premium than he had fixed on it. That the defendants had never furnished their agents or surveyors with blank policies. The board would never sanction it. " The most and best that can be done, is, that all insurances that he may agree to make, and for which the premium he shall charge shall be actually paid, and shall be received here, the defendants will consider as accruing at the time of payment to him, so that, in case of accident between such time of payment, and the receipt of the money here, the company will indemnify such loss, provided the office shall recognise the rate of premium, and shall be otherwise satisfied with the risk. The company will, in no case, guaranty the transmission of money for a premium. Insurances are effected here only on the actual payment of the premium to one of its officers." On the 28th of *April,* 1819, the defendants wrote to *R.*, by their secretary, who said, " I am happy the company could take the risk on better terms than you had estimated. No insurance shall be binding until the premium is received at their office. The reason of this rule is, that the defendants will not be responsible for the risk of sending the premium by land or water. I am authorized, however, to assure you, that in all cases, where the risk is accepted, on the receipt of the premium here, they will execute the policy, to take effect

from the time the premium was received by you, if the same shall be requested, in the letter accompanying the survey." On the 8th of *November*, 1819, the president of the company wrote to *R.*, stating, that the defendants enclosed to him the proposals or rates for southern insurances. "The premiums named are, in no case, higher than those you quoted, with which we are satisfied. You can safely have reference to these risks, in naming premiums, in cases which shall be offered hereafter of like hazards." On the 5th of *January*, 1820, *R.*, in behalf of the defendants, agreed with the plaintiff to insure the stock of dry goods, groceries, &c., of the plaintiff, in *Savannah*, and which had been surveyed by *R.*, who gave to the plaintiff the following receipt : "Received from *Edward Perkins*, 106 dollars, 28 cents, in full for insuring five thousand dollars, at the rate of 2⅛th per cent. per annum, upon his stock of dry goods, groceries, &c., situated in the storehouse of *Ebenezer Jencks*, in *Congress-street*, in the city of *Savannah*, against loss or damage by fire, for one year, from this date, in the *Washington Insurance Company*, in the city of *New-York*. Received, also, fifty cents, for the expense of the policy, and three dollars as my fees, for taking the survey, and transacting the business." "*Henry P. Russell*, agent for said company." The bill stated, that on the 11th of *January*, 1820, a fire broke out in *Savannah*, at a considerable distance from the store-house in which the plaintiff's goods were deposited, which spread rapidly and reached the store-house, which took fire, and most of the goods, &c., notwithstanding every exertion to save them, were destroyed. That the value of the plaintiff's goods, at the time the fire began, was 8730 dollars and 79 cents; and the value of the goods saved was 2144 dollars and 53 cents. That immediately after the fire, the plaintiff applied to *R.*, and demanded the policy of insurance, and offered due proof of the loss of the goods, &c. That *R.* answered, that he had not forwarded the premium

received of the plaintiff to the defendants, it being his usual practice to wait, until he had got a sufficient sum to purchase a bill for the remittance.   That the plaintiff, immediately afterwards, sent notice of the loss, with proof of interest, &c., to the defendants, at *New-York ;* and, afterwards, for greater caution, tendered the premium to the defendants, at their office, in *New-York,* and demanded the policy, and payment of the loss, and offered to them due proof of the loss, &c. ; but the defendants refused to deliver the policy, or pay the loss.   *Prayer,* that the defendants may be decreed to pay to the plaintiff the amount so agreed to be insured by them, on the stock of goods, &c., or else to execute and deliver to him a policy of insurance, pursuant to the agreement, to bear date the same day as the receipt of their agent, &c., and for general relief.

The defendants, in their answer, averred, that *R.* was no otherwise their agent, than they had constituted and appointed him a *surveyor* for them, in *Savannah,* and other adjoining places, of such buildings, or goods, as should be offered for insurance in their office, in the city of *New-York,* and had empowered him to state to applicants for insurance, at *Savannah,* the probable rates, according to the nature of the risk, at which insurance might be expected to be effected by them ; but always reserving to themselves the entire power to abide by, or to vary the rates so stated by him, or entirely to decline such insurance, when the proposal, and his report or survey, should be presented to them for their deliberation.   That they, afterwards, permitted him *to receive from* such persons as were willing to pay the same to him, such sums as he might think fit to name as probable premiums, and to transmit the amount to the defendants, in order to prevent any unnecessary delay in effecting insurance ; but they absolutely denied, that they ever appointed him their agent for insuring or effecting insurance, against loss or damage by fire ; but, on the contrary, they have never

given such power or authority to any of their surveyors, or agents ; and they expressly refused it to *R.*, who, on account of the distance of *Savannah*, suggested the expediency of intrusting him with such power and authority ; and they accordingly instructed their secretary to write to him, to that effect, on the 28th of *April*, 1819. That, in receiving the money, and giving the receipt, on the 5th of *January*, 1820, *R.* acted as the agent of the plaintiff, and not as the agent of the defendants. They denied that *R.* had ever remitted the premium to them, or that they ever accepted or deliberated on the plaintiff's proposal for insurance, nor did they know of it, at the time of the alleged loss ; though they admit, that afterwards, in *May*, 1820, the plaintiff communicated to them the circumstances, and tendered the premium and proofs, as stated in his bill, which they refused, not considering that any insurance had been made by them, or that they were bound by any agreement of *R.* for that purpose.

*November 26th.* The cause was this day brought to a hearing on the pleadings and proofs.

*D. B. Ogden*, for the plaintiff. He cited *Rathbone* v. *Warren*, 10 *Johns. Rep.* 596, in Error. 7 *Vin. Abr.* 395. *Coop. Eq. Pl.* 31. 61. 3 *Atk.* 124. 132. *Prec. in. Ch.* 332. 2 *P. Wms.* 541. *Coop. Eq. Pl.* 188. 198. 292. 1 *P. Wms.* 2, 3. *Atk.* 630. 1 *Bro. Ch. Rep.* 194. 2 *Fonbl. Equ.* B. 6. ch. 3. s. 6. n. *p.* 2 *Atk.* 2. 282. 6 *Ves.* 290. 2 *Johns. Cases*, 424. 5 *Cranch*, 61. 7 *Cranch*, 299. 15 *Johns. Rep.* 44.

*T. A. Emmet*, and *B. Ferris*, contra.

THE CHANCELLOR. The essential point in this case is, whether *Henry P. Russell* was authorized to bind, and did bind the defendants, to insure the goods of the plaintiff, at the rate, and upon the terms specified in the receipt, which

he gave to the plaintiff, on the 5th of *January*, 1820. The counsel for the plaintiff contends, that *R.* was the general agent for the defendants at *Savannah*, for the purpose of receiving premiums, and agreeing to make insurances, and that they were bound by his acts. The other side insist, that *R.* was not their agent for that purpose. He was only their surveyor, to survey and return a description of the property offered for insurance; to state to applicants the probable rates of insurance; to receive from persons willing to pay, the premiums he might think fit to name, and to transmit the same to the defendants; and that they reserved to themselves a right to deliberate and act upon the application, and to accept or reject the proposal and premium, in their discretion. That in receiving the money, *R.* acted as the agent of the applicant; and that there was no contract of insurance in any case, until the proposal had been received and accepted by the defendants, accompanied with a receipt of the premium at their office.

*Russell's* appointment was strictly that of " surveyor for the defendants, of buildings, and goods, offered to be insured in *Savannah*." This appointment was dated the 11th of *December*, 1818. Under this appointment, as surveyor, *R.*, on the 10th of *February*, 1819, published in the papers, at *Savannah*, that " insurances, by the defendants, might be effected by application to him, who had a table and classes of hazards, and rates of annual premiums, to be exhibited; and that he was authorized to say, insurance would be effected as favourable to the assured as those of any company in the *United States;* and that he would attend to the surveying the property, and would obtain the policies from the defendants with the least possible delay." These proposals he signed, as " agent for *Savannah;*" and he says, that this advertisement was published at his own suggestion, and he does not know that it ever came to the knowledge of the defendants.

I apprehend, that the defendants are not bound by any

assumed power contained in these proposals, made and published without their authority. But the proposals do not, in fact, assume any authority to make contracts of insurance *binding* on the company. He was to receive applications, and through him, as the medium of communication, insurances might be effected. He was authorized to say, insurances would be effected on the most favourable terms, that he possessed the rates of premium, and would attend to surveying the property, and obtaining the policies. There is nothing in all this that, upon any necessary and sound construction, carries the idea that he himself could make valid and binding contracts of insurance, in the first instance, without the subsequent sanction of the defendants. He was, evidently, from his own account, to act only as a surveyor, with authority to receive and communicate applications, and to receive and communicate the answers.

He had blank printed proposals of a circular nature, and without signature, issued by the company, and one of these he affixed up in his store-house. It was a general outline of the classes of hazards and rates of annual premiums, and conditions of insurance. One of the conditions was, that " all applications for insurance must be made at the office of the company ;" and another, that " no insurance will be considered as made or binding until the premium is paid ; and that every policy of insurance, made by the company, shall be sealed with its seal, and signed by the president and secretary."

Hitherto, we have discovered nothing that will justify the conclusion, that *Russell* had authority to make a contract of insurance binding on the company. And, if we recur to the correspondence between them, we shall equally fail, in discovering the power contended for in this case.

In a letter from *R.*, to the defendants, dated *April* 9, 1819, he observed, that " There is a difficulty, owing to the distance from *New-York*, in getting along with in-

surances here, and I have written to Mr. *Swords* on the subject. Unless I am furnished with blank policies ready signed, or unless my receipt for the premiums, as agent, is made binding upon the company, until the policies can be obtained from the office, I suspect but little can be done in the way of insuring, for I find that applicants want the risk to commence as soon as the premium is paid." The answer from the defendants, by Mr. *Swords,* their president, was dated the 27th of *April,* 1819, and states, that " the company had never furnished their agents, or surveyors, with blank policies. The board will never sanction it. The most and best that can be done is, that all insurances that you may agree to make, and for which the premium you shall charge, *shall be actually paid, and shall be received here,* the office will consider as enuring at the time of the payment to you ; so that, in case of accident between such time of payment and the receipt of the money here, the company will indemnify such loss, *provided however, that the office shall recognise the said rate of premium which you shall charge, and shall be otherwise satisfied with the risk.* The company will, in no case, guaranty the transmission of money for a premium. Insurances are effected *here only,* on the *actual payment of the premium to one of its officers.*"

By another letter from the defendants, by their secretary, of the date of the 28th of *April,* 1819, they say, " No insurance shall be binding until the premium is received *at this office.* The reason of this rule is, that the company will not be responsible for the risk of sending the premium, either by land or water. I am authorized, however, to assure you, *that in all cases where the risk is accepted,* on the receipt of the premium *here,* they will execute the policy, to take effect from the time the premium was received by *R.,* if *the same shall be requested* in the letter accompanying the survey."

By these letters, the company expressly declared, that

the receipt of the premium by the company, at their office in *New-York*, was indispensable, and that the insurance was to be effected there only. The company were to recognise the rate of premium, and to be satisfied with the risk, and then, and on the receipt of the premium, the contract was to be made by them, and then it might relate back to the date of the receipt of the premium by *R.*, if that was the pleasure of the other party. It was impossible for the company, in more explicit language, to have retained in their own hands their right to bind themselves, or more pointedly to have denied that right to their surveyor.

It appears, by the testimony of *R.*, that in several instances, the rate of insurance agreed on (and conditionally of course) by *R.* was satisfactory to the company, and confirmed by them, and the policies made to bear date with the receipt of the money at *Savannah*. But *R.* himself evidently considered his agreement with the applicants as not binding on the defendants. In his letter to the company, of the date of the 18th of *December*, 1819, he says, " I herewith forward to you two more applications for insurance, which I presume will be *accepted* by the company, *at the rates of premium which I have named*. As I wish to do nothing which the company will not *confirm*, I have fixed the premium agreeably to that established by them for buildings of this description. I forward three or four surveys. If they are received, I will thank you to inform me, as soon as may be, *whether the offers are accepted by the company*, as, in that case, we wish the insurances effected as soon as practicable. It will be desirable, in every instance, that policies be forwarded, with as little delay as possible after the receipt of the premium."

This letter was written only a few days before the plaintiff made application to *R.*, and paid the rate of premium agreed on; and I cannot perceive, either in the written

1822.

PERKINS
v.
WASHINGTON
INS. CO.

documents, or in the usages and practice of the company, any authority in *R.* to bind the defendants in a contract of insurance, before they had seen the terms, and exercised their judgment upon them, and accepted of them, and actually received the premium.

It is extremely probable, that if the terms and premium had been received, in this case, before notice of the fire, the same would have been accepted, and the policy would have been issued. And so we may say, that in ten thousand other cases, property lost by fire might have been insured, upon the usual terms, if application had been made and received in due time. The question here is, was a valid contract made by the defendants, so as to fix the risk upon them, from the receipt of the premium by *R.?* If the agency of *R.*, in agreeing to the rate of insurance, and receiving the premium, did not, of itself, and forthwith, irrevocably bind the defendants, it is certain that they are not bound, for they did nothing afterwards, in ratification of that agreement. I consider that *R.* was, strictly, the agent of the plaintiff, in receiving and undertaking to transmit the premium, for the defendants had repeatedly declared that they would not consider the premium as paid, until received at their office. It would be unjust, as respects the defendants, to bind them without their assent, and contrary to their declared will, explicitly communicated to *R.* Nor can they be fairly accused of any deception towards the public, or charged with holding out to the world that *R.* was invested with absolute powers to bind them. There was nothing, in all the documents or letters he possessed, to warrant such a conclusion; and if the plaintiff dealt with him, in confidence that the agreement with him was binding, he did it without due examination, and at his own peril.

The only circumstance that seems to give any colour to the claim, is, that the defendants, in several instances, al-

lowed the policies to relate back, and cover the property, from the time that the premium was received by *R.*, so as to assume the intermediate risk. But this was in pursuance of their letters of the 27th and 28th of *April*, in which they promised to do it, if the same should be requested, and always with the proviso, that the premium had been actually received by them, and the rates of premium approved of, and the risk adjudged to be satisfactory. The important right of the company, by their board of directors, to *deliberate* upon the terms stated, and to judge of the expediency of the risk, was always reserved; and it is a right so essential to the safety and credit of every insurance company, that we ought not to consider it as having been renounced, unless we are warranted to do so by the clearest proof. If the company were bound definitively by the act of *R.*, in this case, they were equally so in every other case in which the premium was paid to him; and the office of insurance, upon that construction, was in effect transferred to *Savannah*, and the defendant, *R.*, substituted for the board of directors provided for by their charter. A deduction so alarming, and so repugnant to the duty of the directors of the institution, ought to rest on positive proof, and not on presumptions raised in opposition to the declared purpose of the company.

Upon the whole, I see nothing in this case, that can justify me in saying, that the agreement between the plaintiff and *R.*, on the 5th of *January*, 1820, was an agreement to which the defendants were a party, or by which they were concluded. If no loss had intervened, and the defendants, upon information of the survey and rates of premium, and payment of the premium, had, in their discretion, determined that the risk was not acceptable, I apprehend they would have been deemed in the lawful exercise of a right of deliberation, and that the risk would not, and

could not have been enforced against them, contrary to their will. The circumstance of a loss occurring before they had time to deliberate, cannot, in reason and justice, impair their rights, and make that act binding which otherwise would not have been deemed so. The interpretation of contracts, and the administration of justice, ought to rest on general and fixed principles, and not on views of temporary hardship or expediency.

I am, accordingly, of opinion, that the bill ought to be dismissed.

Bill dismissed, without costs.